UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| FOUNTAIN EQUIPMENT FINANCE, LLC, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | No.: 3:24-CV-252-TAV-DCP |
| ELK GROVE TRUCK SALES, INC., | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on defendant's Motion to Dismiss for Lack of Personal Jurisdiction [Doc. 14], pursuant to Federal Rule of Civil Procedure 12(b)(2). Plaintiff has responded [Doc. 32], defendant has replied [Doc. 33], and therefore, the motion is ripe for review. E.D. Tenn. L.R. 7.1(a). For the reasons set forth below, defendant's motion to dismiss [Doc. 14] is **GRANTED in part** and **DENIED in part**, and this action will be **TRANSFERRED** to the United States District Court for the Northern District of Illinois, Eastern Division.

I. BACKGROUND

Plaintiff is a limited liability company with its principal place of business in Knoxville, Tennessee, and defendant is an Illinois corporation [Doc. 1 ¶¶ 1–2]. As a business, plaintiff engages in the financing of heavy equipment, tractors, and trailers for businesses and individuals as well as refinancing vehicles and equipment for its customers [*Id.* at ¶ 4].

In February 2023, Red Star Trans, Inc. ("Red Star") contacted plaintiff about financing two used tractor trucks that it wished to purchase from defendant [*Id.* ¶ 7].[1] Plaintiff determined that it would provide the financing if it received clear titles to the trucks [*Id.*]. On March 8, 2023, plaintiff wired $399,340 to defendant after it approved the financing for Red Star [*Id.* ¶ 8; Doc. 1-1]. Plaintiff alleges that since the payoff was made, it has issued numerous verbal and written requests and demands for the titles; however, as of the date of filing, defendant has yet to provide the titles [Doc. 1 ¶ 9]. Defendant's refusal to provide clear titles to the trucks is arbitrary and capricious, plaintiff asserts, and it has put plaintiff's interest in the collateral it financed at risk [*Id.* ¶¶ 10–11]. Plaintiff states that trucks are a depreciating asset, and it would not have financed Red Star and paid defendant if it was not going to receive clear titles [*Id.* ¶ 11].

As a result of the unnecessary and continuing time and expenses plaintiff has incurred trying to obtain the titles, plaintiff requests that it be awarded a judgment against defendant in the amount of $399,340 plus attorney's fees, costs, and prejudgment interest [*Id.* at ¶ 12, p. 2]. Or, in the alternative, plaintiff requests an order from this Court requiring defendant to provide clear titles on the two trucks and award plaintiff reasonable attorney's fees and costs [*Id.* at 2].

Defendant moved to dismiss this matter for lack of personal jurisdiction [Doc. 14], arguing that receiving a wire from Tennessee is insufficient for this Court to assert personal jurisdiction over it [Doc. 15, p. 2]. First, defendant contends that plaintiff cannot establish

---

[1] According to plaintiff, defendant's website states that it sells "quality used sleeper semi[-]trucks that are fully inspected and D.O.T. certified. . . ." [*Id.* ¶ 5].

general personal jurisdiction over it because plaintiff has not alleged, and cannot demonstrate, that defendant is "at home" in Tennessee [*Id.* at 3]. Second, defendant asserts that plaintiff cannot establish specific personal jurisdiction over it because the only alleged contacts defendant had with Tennessee are the money transfer initiated by plaintiff and plaintiff's requests of titles from defendant [*Id.* at 5]. These contacts, defendant argues, are unilateral and thus do not establish personal jurisdiction [*Id.*]. Further, defendant states that it did not engage in business with Tennessee, nor did it purposefully avail itself of activities within Tennessee [*Id.*].

In response, plaintiff requests the Court deny defendant's motion to dismiss [Doc. 14], arguing that its complaint, in conjunction with its submitted affidavits [Docs. 20-1, 20-2, 20-3, 32-1, 32-2], reflect a *prima facie* showing that specific personal jurisdiction over defendant exists [Doc. 32, p. 1].[2]

Adding to the factual allegations in its complaint, plaintiff states that the financing for the transaction of the two trucks was arranged through Equipment Funding Solutions, LLC ("EFS"), a broker [*Id.* at 2]. Prior to the transfer of funds to defendant, plaintiff states it received an email from EFS with a link that contained copies of the Certificates of Origin for a Vehicle for the two trucks from defendant with the liens of plaintiff noted [*Id.* at 3]. These certificate copies specifically reference the address of plaintiff in Tennessee [*Id.* at 4; *see* Doc. 32-1, pp. 4–7]. After receiving these copies, plaintiff states it arranged for the

---

[2] Notably, plaintiff only addresses specific personal jurisdiction in its response, stating it does not have enough information at present to address general personal jurisdiction; however, in the event the Court conducts an evidentiary hearing, plaintiff states that it reserves the right to later present proof as to general personal jurisdiction [*Id.* at 6 n.1].

3

wire transfer of funds to be sent by SmartBank, a Tennessee corporation, to defendant [Doc. 32, p. 3]. Upon receipt of these funds, plaintiff alleges that defendant was supposed to send the original certificates to plaintiff in Tennessee, but defendant did not do so [*Id.*]. In his affidavit, as attached by plaintiff, the president of EFS, David Strand, testifies that he provided defendant with the address information of plaintiff in Tennessee [*Id.*; Doc. 32-1 ¶ 3]. Further, Strand testifies that he informed a representative of defendant that the loan proceeds were coming from a lender in Tennessee [Doc. 32, p. 4; Doc. 32-1 ¶ 3].

Plaintiff asserts that the above, additional facts support the conclusion that defendant purposefully availed itself of causing a consequence in Tennessee for purposes of specific jurisdiction [*Id.* at 8]. Specifically, plaintiff argues that representatives of defendant knew they were dealing with a Tennessee lender, plaintiff, and knew, and did in fact note, that the lien on the certificates for the two trucks was of a lender from Tennessee [*Id.*]. Based on defendant "taking th[e]se necessary steps and directing its efforts toward [plaintiff] in Tennessee," plaintiff argues that defendant purposefully availed itself of causing a consequence in Tennessee—the wiring of funds from Tennessee [*Id.* at 8–9]. Further, plaintiff contends that the cause of action arose from the activities of defendant directed at Tennessee, and the consequences caused by defendant have a substantial connection to Tennessee [*Id.* at 9]. Accordingly, plaintiff contends, specific personal jurisdiction over defendant is established [*Id.* at 9].

In the event the Court determines it lacks personal jurisdiction over defendant, plaintiff requests that the Court transfer the case to the United States District Court for the Northern District of Illinois, pursuant to 28 U.S.C. § 1631 [*Id.* at 2]. Plaintiff states that

4

such district would have subject matter jurisdiction over this action, citing in part that defendant is an Illinois corporation with its principal place of business in Illinois [*Id.* at 10]. Plaintiff also asserts that at the time of filing its complaint, it had reason to believe this Court would have personal jurisdiction over defendant, and therefore, it would be in the interest of justice that this case be transferred to the Northern District of Illinois [*Id.* at 11]. *See LGT Enters., LLC v. Hoffman*, 614 F. Supp. 2d 825, 842 (W.D. Mich. May 14, 2009) (citations omitted) ("Unless there is evidence that the plaintiff brought the case in this district in bad faith or to harass the defendant, the interest of justice generally requires a transfer rather than dismissal.").

In reply, defendant argues that a non-party, Red Star, initiated the contact with Tennessee by soliciting a loan from plaintiff [Doc. 33, p. 2]. This unilateral action, defendant contends, demonstrates that Red Star purposefully availed itself of Tennessee, not defendant [*Id.* at 2–3]. Defendant maintains that while it may have completed paperwork to finalize the transaction and known that it was selling trucks to an entity that borrowed money from Tennessee, such an attenuated contact does not constitute purposeful availment in Tennessee [*Id.* at 3]. Furthermore, defendant asserts that plaintiff has not alleged it had a contract with defendant nor articulated any legal duty of defendant to provide the requested titles [*Id.*]. Also, defendant contends that there were no prior negotiations between the parties, as the parties did not have any previous relationship, and there were no future consequences contemplated by the parties [*Id.*]. Defendant does not address plaintiff's alternative request for transfer.

## II.     STANDARD OF REVIEW

Plaintiff bears the burden of establishing the Court's personal jurisdiction over defendant. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002). The Court deems it unnecessary to conduct an evidentiary hearing on the issue of personal jurisdiction. Accordingly, the Court must consider the pleadings and affidavits in a light most favorable to plaintiff, and dismissal under Rule 12(b)(2) is "proper only if all the specific facts which [plaintiff] alleges collectively fail to state a prima facie case for jurisdiction." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996); *accord Estate of Thomson v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 360 (6th Cir. 2008) (citation and internal quotation marks omitted) (stating when the district court relies solely on written submissions and affidavits to resolve a Rule 12(b)(2) challenge, "the plaintiff's burden is relatively slight").

However, the Court need not "ignore undisputed factual representations of the defendant which are consistent with the representations of the plaintiff." *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 153 (6th Cir. 1997). And, once a defendant submits "affirmative evidence showing that the court lack[s] jurisdiction, mere allegations of jurisdiction are not enough"; rather, a plaintiff must "set forth, by affidavit or otherwise, specific facts showing jurisdiction." *Parker v. Winwood*, 938 F.3d 833, 839–40 (6th Cir. 2019).

"A federal court may only exercise personal jurisdiction in a diversity case if such jurisdiction is (1) authorized by the law of the state in which the court sits; and (2) is otherwise consistent with the Due Process Clause of the Fourteenth Amendment." *Youn*

6

*v. Track, Inc.*, 324 F.3d 409, 417 (6th Cir. 2003). Where the state long-arm statute extends to the limits of the due process clause, "the two inquiries are merged and the court need only determine whether exercising personal jurisdiction violates constitutional due process." *Bridgeport Music, Inc. v. Still N The Water Pub.*, 327 F.3d 472, 477 (6th Cir. 2003). Because Tennessee's long-arm statute "has been interpreted as coterminous" with the limits of the due process clause, *id.* (internal citation omitted), the Court considers whether exercising personal jurisdiction over defendant would violate due process.

A court may exercise personal jurisdiction over a defendant on the basis of general jurisdiction or specific jurisdiction. *Youn*, 324 F.3d at 417 (citing *Burger King v. Rudzewicz*, 471 U.S. 462, 472 (1985), and *Conti v. Pneumatic Prods. Corp.*, 977 F.2d 978, 981 (6th Cir. 1992)). General jurisdiction requires a showing that a corporation's "affiliations with [Tennessee] are so 'continuous and systematic' as to render [them] essentially at home in the forum state." *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014) (internal citation omitted). Absent exceptional circumstances, a corporation is only at home in two places: (1) its place of incorporation and (2) its principal place of business. *Id.*

Turning to specific jurisdiction, a court may exercise specific jurisdiction over a defendant "in a suit arising out of or related to the defendant's contacts with the forum." *Conti*, 977 F.2d at 981 (6th Cir. 1992). The Sixth Circuit applies a three-part test, often termed the *Mohascho* test, for determining whether an exercise of specific jurisdiction falls within constitutional limits: (1) "the defendant must purposefully avail himself of the privilege of acting in the forum state"; (2) "the cause of action must arise from the defendant's activities there"; and (3) "the acts of the defendant or consequences

7

caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968); *see also Conti*, 977 F.2d at 981. "Each part of the *Mohasco* test represents an independent requirement, and failure to meet any one of the three means that personal jurisdiction may not be invoked." *AMB Media, LLC v. OneMB, LLC*, No. 23-5607, 2024 WL 2052151, at *3 (6th Cir. May 8, 2024) (internal quotation marks omitted) (quoting *LAK, Inc. v. Deer Creek Enters.*, 885 F.2d 1293, 1303 (6th Cir. 1989)).

## III. ANALYSIS

### A. General Jurisdiction

As noted previously, plaintiff's response to defendant's motion to dismiss does not address whether the Court has general personal jurisdiction over defendant [Doc. 32, p. 6 n.1]. Plaintiff states it does not have enough information presently to address general personal jurisdiction, but plaintiff clarifies it does not intend to waive the right to later present such proof in the event the Court holds an evidentiary hearing [*Id.*]. As noted previously, the Court does not find an evidentiary hearing necessary here, and thus the Court will strictly address whether specific personal jurisdiction exists over defendant as briefed by the parties.[3]

---

[3] The Court does note, however, that defendant is "at home," for purposes of general personal jurisdiction, in Illinois, where it is incorporated and has its principal place of business [Doc. 15, p. 3; Doc. 1, p. 2; Doc. 32, p. 10]. Based on the analysis *infra*, however, it does not appear defendant would be considered "at home" in Tennessee to establish general personal jurisdiction.

8

## B. Specific Jurisdiction

Turning to the first part of the *Mohasco* test, purposeful availment "is present where the defendant's contacts with the forum state proximately result from the actions by the defendant *himself* that create a substantial connection with the forum State . . . ." *Neogen Corp.*, 282 F.3d at 889 (internal quotation marks omitted) (emphasis in original) (quoting *Burger King Corp.*, 471 U.S. at 475). The requirement of purposeful availment "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous or attenuated contacts of the unilateral activity of another party or third person." *Air Prods. & Controls, Inc. v. Safetech Intern., Inc.*, 503 F.3d 544, 551 (6th Cir. 2007) (internal quotation marks omitted) (quoting *Burger King Corp.*, 471 U.S. at 475). Though "a defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties[,]" "a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Walden v. Fiore*, 571 U.S. 277, 286 (2014) (citation omitted).

Here, even viewing the factual allegations in the light most favorable to plaintiff and drawing all reasonable inferences in its favor, plaintiff cannot establish that defendant purposefully availed itself of the privilege of acting in Tennessee.

Plaintiff contends that defendant purposefully availed itself of the privilege of acting in Tennessee in part because defendant knew it was receiving the funds for the transaction from a lender in Tennessee [Doc. 32, p. 8]. However, "knowledge of [a plaintiff's] strong forum connections" "impermissibly allows a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis." *Walden*, 571 U.S. at 289 (internal quotation

9

marks omitted) (citation omitted); *accord Cunningham v. Sunice, Inc.*, No. M201801129COAR3CV, 2019 WL 4120742, at *4 (Tenn. Ct. App. Aug. 29, 2019) (stating that the defendant's knowledge that the plaintiff "lived in Tennessee, standing alone, cannot support the exercise of specific jurisdiction"). Plaintiff also argues that defendant purposefully availed itself of Tennessee because defendant "knew [it] would not receive funds from the Tennessee lender unless [it] first noted the liens of the Tennessee lender on the Certificates[,]" and the defendant "did actually note the lien of [plaintiff] on the Certificates with the Tennessee address" [Doc. 32, p. 8]. Neither of these arguments, however, reflect defendant having contact with Tennessee itself.

The sole conduct defendant appears to have directed at Tennessee is that defendant sent copies of the relevant certificates to plaintiff, albeit through the third-party EFS. But the Court does not find that this action created a "substantial connection" with the forum state of Tennessee. *See Burger King Corp.*, 471 U.S. at 475. First, defendant's relationship with plaintiff, to the extent it can be defined as such, was initiated due to Red Star's contact with plaintiff. *See Neogen Corp.*, 282 F.3d at 889 (citation omitted) (noting that a defendant should not be haled into another jurisdiction solely as a result of the unilateral activity of a third person). No fact alleges that defendant was the party to reach out or initiate contact with Tennessee or even plaintiff itself. *Cf. Lak, Inc.*, 885 F.2d at 1300 (internal quotation marks and citation omitted) (emphasis added) ("[P]arties who *reach out* beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities.").

10

Furthermore, it appears that defendant's alleged contact with Tennessee came from plaintiff's business being located in Tennessee, "not because the defendant sought to invoke the benefits and protections of Tennessee law." *Bulso v. Shea*, 730 F. App'x 347, 350 (6th Cir. 2018) (citations omitted). Defendant would have sent copies of the relevant certificates regardless of plaintiff's base of operation, especially given Red Star was the third party that chose plaintiff as the lender. *Id.*; *cf. Watson v. Golden N. Van Lines, Inc.*, No. 2:24-CV-2227, 2024 WL 4956632, at *5 (W.D. Tenn. Dec. 3, 2024) (internal quotation marks and citation omitted) (stating that the defendants' action "did not occur just because Plaintiff happened to be in Tennessee; rather, this action occurred because [Defendants] sought[] to further [their] business and create continuous and substantial consequences there"). And while plaintiff argues defendant purposefully availed itself of the privilege of Tennessee law, plaintiff does not explain how defendant sought to invoke any benefits and protections of Tennessee law. And from the record, the Court cannot ascertain any indication that defendant intended on invoking such benefits or protections either.

The Court also finds that none of the alleged facts plaintiff presents indicate that defendant intended to create a business relationship lasting beyond the one transaction. *See Pease Const., Inc. v. Crowder-Gulf Joint Venture, LLP*, No. 10-2780, 2011 WL 2118662, at *7 (W.D. Tenn. May 27, 2011) (citing *Air Prods.*, 503 F.3d at 551). While defendant claims that no contract existed between itself and plaintiff [Doc. 33, p. 3], plaintiff makes brief reference to a financing agreement [Doc. 32, p. 3 (citations omitted)]. Plaintiff does not, however, provide the Court with the financing agreement or any other evidence of a

11

contract. Even if the Court were to presume a contract existed between the parties, defendant's entry into a contract with plaintiff in Tennessee *alone* would not automatically subject defendant to personal jurisdiction in Tennessee. *See Air Prods.*, 503 F.3d at 551 (citations omitted). But the "presence of certain factors in addition to the contract" would lead to a finding of purposeful availment. *Id.* These factors include "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Burger King Corp.*, 471 U.S. at 479. However, having none of these considerations before it, the Court cannot conclude that purposeful availment is established here. There is no evidence in the record or fact alleged by plaintiff that demonstrates that defendant intended on creating a continuing relationship and obligation with plaintiff, a business operating out of Tennessee. The action of sending copies of the certificates to plaintiff is nothing more than an isolated transaction, as far as the record discloses. *See Kerry Steel, Inc.*, 106 F.3d at 151 (noting that the purchase agreement between the plaintiff and the defendant "represents nothing more than an isolated transaction" and that "[t]here is no indication in the record that [the defendant] intended to create an ongoing relationship" in the forum state with the plaintiff); *see also Surowiec v. Cap. Title Agency, Inc.*, No. 08-13543, 2009 WL 877633, *4 (E.D. Mich. Mar. 30, 2009) (quoting *Lanier v. Am. Bd. of Endodontics*, 843 F.2d 901, 911 (6th Cir. 1988)) (finding that the object of defendant's contacts with the plaintiff "was not to 'have on-going, far-reaching consequences'" in the forum state's market).

Based on the foregoing, plaintiff has not made a *prima facie* showing that defendant purposefully availed itself of the privilege of acting or causing a consequence in Tennessee.

12

Case 3:24-cv-00252-TAV-DCP Document 34 Filed 03/20/25 Page 12 of 15 PageID #: 141

*See Mohasco*, 401 F.2d at 381; *AMB Media, LLC* , 2024 WL 2052151, at *3. Therefore, the Court does not have specific personal jurisdiction over defendant, and defendant's motion to dismiss [Doc. 14] is **GRANTED** to such extent. However, for the reasons explained *infra*, defendant's motion [*id.*] is **DENIED** to the extent it requests for this action to be dismissed.

### C. Transfer of Action

Upon a finding that this Court lacks personal jurisdiction, plaintiff requests that the Court transfer this case to the United States District Court for the Northern District Court of Illinois, Eastern Division, pursuant to 28 U.S.C. § 1631 [Doc. 32, pp. 9–12].[4] As stated previously, defendant does not respond to this alternative request of transfer.

When a Court finds a lack of jurisdiction, 28 U.S.C. § 1631 authorizes transfer "in the interest of justice" to a court "in which the action . . . could have been brought at the time it was filed." *See Roman v. Ashcroft*, 340 F.3d 314, 328 (6th Cir. 2003) (holding that § 1631 "applies to federal courts identifying any jurisdictional defect, regardless of whether it involves personal or subject matter jurisdiction."). The Sixth Circuit has explained that § 1631 confers "broad discretion" on the district court in determining whether to transfer or dismiss an action. *Stanifer v. Brannan*, 564 F.3d 455, 456–57 (6th Cir. 2009). "A court may decide to dismiss an action rather than transferring it under § 1631 either because (1) no permissible federal court would have jurisdiction over the action, or because

---

[4] While plaintiff made such request in its response to defendant's motion to dismiss, and not in a separate motion, "a court may *sua sponte* cure jurisdictional defects by transferring a suit under § 1631." *Burrell v. Concept AG, LLC*, No. 218CV02265JTFTMP, 2019 WL 12762540, at *13 (W.D. Tenn. Aug. 23, 2019) (citation omitted).

13

(2) transfer would not be in the interest of justice." *Roman*, 340 F.3d at 328 (internal quotation marks and citation omitted).

The Court turns first to whether this action "could have been brought" in the Northern District Court of Illinois, Eastern Division, which is to ask where venue would be proper and where personal jurisdiction would exist. 28 U.S.C. § 1631. In its memorandum in support of its motion to dismiss, defendant states it is "an Illinois corporation headquartered in Illinois" [Doc. 15, p. 3]. Defendant's address, as found on one of plaintiff's exhibits [Doc. 32-1], is for Elk Grove Village, Illinois. According to open-source, reliable information, Elk Grove Village, Illinois, shows to be in both Cook and Du Page counties, and both of these counties are within the Northern District of Illinois, Eastern Division.[5] *See* 28 U.S.C. § 93(a)(1). Given defendant resides in and is incorporated in Illinois, the Northern District of Illinois, Eastern Division, would have personal jurisdiction over defendant, and the district would be a proper venue. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) (stating that, for a corporation, "the paradigm forum for the exercise of general jurisdiction is . . . one in which the corporation is fairly regarded as at home"); *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012) (stating that a defendant who resides "in the forum state will always be subject to personal jurisdiction of the court"); 28 U.S.C. § 1391(b)(1) (stating venue is proper in "a judicial district where [the] defendant resides"); 28 U.S.C. § 1391(c)(2)

---

[5] The Court also notes that the Proof of Service attached the executed summons for defendant [Doc. 8, p. 2] indicates that defendant's registered agent was served in Des Plaines, Illinois, which also sits in Cook County, Illinois.

14

(stating that, for venue purposes, a corporate defendant shall be deemed to reside "in any judicial district in which such defendant is subject to the court's personal jurisdiction").

As to the interests of justice, plaintiff submits it had "a reasonable basis for believing that personal jurisdiction over the [d]efendant was available in Tennessee" for the same reasons it argues above [Doc. 32, p. 11; *see* Doc. 32-2]. Additionally, plaintiff states that the Northern District of Illinois would have subject matter jurisdiction of this action because of the satisfied requirements of diversity jurisdiction [Doc. 32, p. 10]. The Court finds that transfer would further the interests of justice here because it would serve "the ultimate goal of allowing [the] case[] to be decided on [its] substantive merits, as opposed to being decided on procedural grounds." *Flynn v. Greg Anthony Constr. Co.*, 95 F. App'x 726, 741 (6th Cir. 2003) (citation omitted). Furthermore, defendant has not objected to plaintiff's request. Therefore, in the interests of justice, and because the case could have been brought in Illinois, the Court will transfer this case to the United States District Court for the Northen District of Illinois, Eastern Division.

## IV. CONCLUSION

For the reasons explained above, defendant's Motion to Dismiss for Lack of Personal Jurisdiction [Doc. 14] is **GRANTED in part** and **DENIED in part**, and the Clerk is **DIRECTED** to **TRANSFER** this action to the United States District Court for the Northern District of Illinois, Eastern Division, for all further proceedings.

IT IS SO ORDERED.

s/ Thomas A. Varlan  
UNITED STATES DISTRICT JUDGE